Good morning. Judge Mylon Smith has kindly asked me to preside this morning. And first up, we have case number 25-3831, Matt Wright v. State of Washington. Good morning, Your Honors, and may it please the Court. Is it okay if I reserve three and a half minutes? Counsel, could you speak a little louder? I'm not hearing you well. I ask that I reserve three and a half minutes for rebuttal. Of course. This case comes to the Court after a summary judgment. Excuse me, Counsel, I am still not hearing you. Can you turn up the microphone, please? Or get closer to it? Hello, can you hear me now? Now I can. Thank you. In this case comes to the Court after a summary judgment grant, and it asked whether or not a persistent inmate can be silenced because he's filed a large number of grievances. And can he be threatened with transfer? Can his care be cut? Can he be disciplined simply because he filed grievances? We contend, Your Honors, that it's never a legitimate penological reason to threaten to transfer a person at all. Once you make a threat to transfer, that relieves the whole qualified immunity analysis because retaliation can never be a legitimate reason to transfer, to threaten to transfer, to cut a person's care. And the cutting of the person's care all occurred right after Mr. Wright complained. The District Courts erred in this case because the District Court assumed that the facts presented by the appellees were correct. And they took those facts as fact. But if you look at the facts as they lay them out, none of those facts even mention the fact that Dr. Gomes threatened to transfer Wright. None of those facts mention the fact that Mr. Wright never asked for a female therapist. He said that he was more comfortable with a female therapist, but he never asked for a female therapist, and he never said that he could not function or accept therapy unless it was from a female. Counsel, what's the record evidence, can you point me to it, suggesting that Dr. Gomes threatened to transfer? It's in Mr. Wright's declaration. I don't have the exact citation, but it's in his declaration that she threatened to transfer him. Well, what were the words used that she had? What did she convey to Mr. Wright? She said that if you keep filing grievances and you keep complaining, that I'm going to transfer you. And there's also an email where she stated that I know we can't retaliate by transferring him, but we have to do something, which also indicates that during the 30B6 deposition. The testimony was that they wanted to transfer Wright, but they couldn't come up with a good reason for transferring him. And because they didn't come up with a good reason for transferring him, that whole discussion was stopped. But it continued to come up long after Dr. Gomes was even treating Mr. Wright. Months after, even as much as a year after, she continued to push for his transfer, and she continued to push for his transfer for no penological reason other than that she was upset with him or she was angry with his complaining. Counsel, even if I spot you all that, that a jury could find based on the facts as they are to be construed in the light most favorable to you, your client, even if we spot you that, you still have to satisfy prong two of the qualified immunity test. Can you address that? If a jury finds that there was a retaliatory animus in requesting the transfer, in cutting his care, in infracting him for charges that they knew could not stick, if a jury finds that that was retaliation, there is no qualified immunity. Because the act of retaliation in and of itself is an act of deliberate violation of the First Amendment, so you can't have qualified immunity. You can't look at, I think what the appellees want the court to do is to simply look at what led up to the individuals requesting a transfer. What led up to Dr. Gomes cutting the care? What led up to the infractions? But that's not the standard for qualified immunity. Those issues have to be resolved. Those are factual issues that have to be resolved by a jury. If a jury says, we believe that this was retaliatory, qualified immunity disappears. You can't deliberately violate the Constitution and then say, I have qualified immunity. Ever since 1995, in a whole series of cases by the Ninth Circuit, any act of retaliation based on First Amendment protected activity is prohibited. And probably in at least four of those cases, qualified immunity was an issue and the court dismissed it fairly quickly by saying, qualified immunity is simply not available if retaliation is present. Counsel, can you provide us a case that clearly establishes a constitutional violation with anything approaching the number of grievances filed by Mr. Wright? Well, I don't think there's a case directly on point, although in Brohan v. Cry, he certainly was very persistent in the number of grievances he filed because of the conduct that he was receiving. However, the problem with this entire case is that it's content-based. It's the content of Mr. Wright's grievances that motivated the conduct. For example, we readily concede that a prison can make a rule that can say you can only file a certain number of grievances. They can make a rule that says you can only file a certain number of kites, and if you exceed that limit, we'll punish you. But that's not what they did. They said that if you file more than five grievances, the sixth grievance won't be considered until one of the first five drop off. If you file a lot of kites and they're non-emergency kites, that at some point, they'll just be answered with received. If the kites are an emergency, action will be taken. Those are neutral, non-content-based solutions that the prison had already placed in effect. Instead of following those solutions, what happened was they decided that that wasn't good enough because he kept beating the infractions. If they said, we think you're violating one of the WACs, we think you're violating a DLC policy, we're going to infract you. But they would find him not guilty because DLC's policy says that you cannot be infracted for filing too many kites. There's no policy at all, and it's a dangerous policy because if you don't have a neutral rule and you only bring it up when an inmate complains, every time an inmate complains, you could say, because it's an administrative burden, we can't fully function. And therefore, it's a hazard for us. And therefore, we don't have to do this. And that would be dangerous because you could do it every single time. I could think of all kind of ways where you could say, it's a burden. It's a burden because I have to answer the grievance. It's a burden because I have to research conduct. It's a burden because I have to talk to employees that are involved. You can make that statement with every grievance that an inmate files. The remedy is not to threaten to transfer right. The remedy is to either have a specific rule in the WAC, a specific DLC policy. If he violates that policy, he's punished. But if he's not violating any policy, then what you're allowing is ad hoc basis for the prison to say, I don't like what this person said. I don't like the content of what they're complaining about because they may be threatening my job. And in this case, Mr. Wright complained that Gomes was missing appointments, that she was doing other things besides therapy during the time that they were supposed to be having sessions. If he complains about that and they do nothing about it, and then he complains more and they still do nothing about it, and then he complains that he's being retaliated and they still do nothing about it, the fact that he's persistent doesn't mean that his constitutional rights should go away. And that's exactly what they're arguing. Counsel, would you like to save the balance of your time? Yes. Thank you. Thank you.  May it please the court. My name is John Justice and I represent the respondent state of Washington and individual state employees in this appeal. The district court's ruling granting the defendant's motion for summary judgment should be affirmed for three reasons. First, the individual defendants are entitled to qualified immunity for the retaliation claim. Second, no expert testimony supported the negligence claim. And third, Mr. Wright was not excluded from any department program because of his disability under the ADA. Ultimately, the district court correctly rejected Mr. Wright's attempts to conflate mental health care decisions made by his providers regarding his care needs with the correctional consequences of his abuse of the department's resolution program. This court should do the same. Regarding qualified immunity, the district court correctly concluded that the individual defendants were entitled to qualified immunity because he did not identify an adverse action any of the individual defendants took against him because of protected conduct. Isn't that a question of fact, though, counsel? You have Mr. Wright's declaration that he was threatened to be transferred based on the grievances that he filed, and the state has its version of events. Isn't that a question of fact that we have to view in the light most favorable to Mr. Wright? On qualified immunity, the burden that Mr. Wright has is to present, first of all, evidence of a constitutional violation, but also clearly established law that would put any of the individual correctional employees on notice that their actions were clearly unlawful. And he failed to do that. And the court scoured the record, looked at the actual records, not just the allegations by Mr. Wright, and concluded, first of all, that there was no evidence supporting a claim of retaliation. But secondly, the court looked at the second prong of the qualified immunity analysis and determined that no case cited by Mr. Wright put any of those individuals on notice that their actions in, first of all, making care decisions for Mr. Wright, or second of all, making correctional decisions about his abuse of the resolution program were clearly unlawful. And for those reasons, the district court correctly concluded that qualified immunity applied, regardless of whether there might be a factual dispute on the retaliation claim. But even if we – I mean, we are to assume the plaintiff's facts on summary judgment. And if we do, isn't that a clear case of retaliation? Why doesn't – why isn't the prong to question answered in that fashion? Well, I guess first of all, simply alleging retaliation or simply pointing out that Mr. Wright submitted a grievance and then some action occurred does not establish a claim of retaliation. Even if Mr. Wright may believe that everything the department did regarding his care or regarding his abuse of the resolution program was in retaliation, the court still should look at the evidence in the record, first of all, to decide whether or not there is an adverse action taken without a legitimate penological need, which the court looked at that and correctly concluded that simply Mr. Wright's belief that he was being retaliated against is not enough to get past summary judgment. There has to be evidence to support that. And second of all, the care needs are separate from the claim of retaliation. And again, the court looked at those care decisions made by the providers and concluded that the evidence did not support that they were retaliatory despite Mr. Wright's belief that everything that was done regarding his care or regarding his abuse of the resolution program was retaliatory. Simply making that allegation is not enough to get past the summary judgment motion, particularly when you're talking about qualified immunity and the fact that even if there is a question of fact on the underlying retaliation claim, there needs to be some case that puts those department employees on notice that their specific actions in the specific case are clearly unlawful. That was also a reason to sustain qualified immunity. As this court has already identified, the plaintiff had to establish that it was more than just a timing issue between actions taken by the department and his alleged protected conduct. Regarding the care and treatment decisions for Mr. Wright, the record established that there was medical judgment exercise regarding the care that he required, the amount of visits that he required, and that that's an appropriate, legitimate correctional goal to decide the appropriate level of care for an inmate. Regarding the consideration of transferring Mr. Wright to another facility, the record showed that, again, that consideration of a transfer was made in connection with his care needs and reflected medical judgment about what was in his best interest. This is not an adverse action, and it's unrelated to his abuse of the resolution program, which was a correctional issue. Counsel, Mr. Wright points to evidence, which Dr. Gomez said, something to the effect of, I understand we cannot retaliate by transferring him, but we need to do something. Why isn't that sufficient evidence to create a dispute of fact? Again, the court, the district court, correctly looked at the context of these statements. Mr. Wright was repeatedly threatening everybody in his orbit, correctional employees, medical care providers with lawsuits over retaliation. So obviously the department and Dr. Gomez was aware that any decision that they made would be viewed by Mr. Wright as retaliatory. And so it put in that context, and if you look at what she's describing, is there had to be care choices made regarding Mr. Wright. Dr. Gomez in particular concluded that the treatment that was being provided to Mr. Wright was not having any effect because of his own view of the world and his personality disorder. And so she knew that any decision they made regarding his care would be viewed by him as retaliatory. But at the same time, what she's expressing there is there has to be some care decisions made. And whether that meant finding a different provider for him, sending him to a facility with another female provider that he could work with, those decisions had to be made. And that's what Dr. Gomez is reflecting, is that we have to make a decision. Obviously, he's going to view it as retaliatory. And so, again, the context matters. And simply acknowledging what they know to be the case, which is you can't retaliate against an inmate for protected conduct, is a reflection of the fact that the department has a policy that prevents that. So she's, again, reflecting that reality, but still urging the care providers to make a decision about Mr. Wright's care. Finally, regarding the temporary suspension from the resolution program, the record establishes that this was due to Mr. Wright's violation of the department's policy on abuse by volume. He was given multiple warnings about his continued abuse of the system, and he continued his behavior. Preventing abuse of the resolution program is a legitimate penological goal. And in this case, as the court noted, Mr. Wright had submitted hundreds of resolution requests, most of them duplicative in nature. And as the district court concluded, preventing that abuse of the system, crowding out other legitimate resolution requests from other inmates is a legitimate penological goal. Regarding the negligence claims, the district court correctly concluded that Mr. Wright did not submit any expert testimony establishing a standard of care regarding his treatment decisions. And is it your understanding? Washington law requires an expert report to establish negligence in this kind of case, whether it's framed as a claim for medical negligence under the Reyes versus Yakima Health District case, one ninety one Washington second second seventy nine, or if it's framed as correctional negligence, Gordon versus Kitsap County one eighty seven Washington appellate ten twenty three. Both of those cases conclude and rule that whether you're talking about medical negligence or correctional negligence, an expert needs to establish the standard of care. And there was no expert testimony on behalf of Mr. Wright that did that. There's an exception to that rule, though, right? When there's a gross deviation from the standard. A gross deviation from ordinary care that a lay person could easily recognize it. There are exceptions if it's if it's apparent to a lay person. But the district court in this case correctly concluded that what Mr. Wright was complaining about. And if you look at actually the allegations in the causes of action asserted in his complaint, what he's complaining about is care, medical care decisions. And those are based on testing, based based on interviews, based on sessions with Mr. Wright. Those are not evident to a lay person that any of those care decisions would be below the standard of care. And certainly without any expert testimony, even establishing what the standard of care was, the district court correctly concluded that Washington law would not allow that case that those allegations to proceed. Lastly, regarding the ADA claim, Mr. Wright failed to establish that he was not reasonably accommodated based on any of his alleged disabilities. For these reasons, the district court's grant of summary judgment should be affirmed. And I'm happy to answer any other questions the court might have. Thank you, counsel. Thank you. We're not saying that a mental health therapist cannot make a judgment as to what the appropriate care is for an inmate. But what happened here was that Mr. Wright complained about her missing appointments. And shortly after advocating for more time for him, getting more time for him from the CRC, she directly followed his complaints with saying she was going to cut his care. Now, that could have been a legitimate reason and it could have been a retaliatory reason. But the jury should make that call, not the court. In addition, counsel brought up the fact that he didn't believe that or he believed that we needed to have an expert to establish negligence. With respect to negligently threatening to send someone to a prison where this person's life would be in danger and he would be away from his family, knowing that the inmate suffered from a mental illness and had a learning disability, the fact that that was done does not require a professional judgment. That simply requires just being careful, just not being careless. And so I think with respect to the negligence claim, again, there are material issues of fact. If you look at Shepard and you look at Bruce, they both involve the fact that a prison can always come up with a neutral reason for its conduct. But in this case, the prison lied about the reason that they wanted to transfer Wright. They said that he could only be treated by a female therapist and he requested a female therapist. And so they were transferring him for his own benefit because a therapist, they didn't have any female therapists at Monroe and that they needed to transfer him across the state in order to have the female therapist. That was an act of retaliation. All the explanations could be innocent. They could be non retaliatory, but they also could be retaliatory. And a jury needs to make that question. And with respect to the qualified immunity issues that were brought up. One, if you deliberately violate the Constitution, you're not entitled to qualified immunity. And secondly, if it's obvious, if the the fact that you're you're you're retaliating against somebody is obvious, like in the hope case, you don't have to have a case exactly that says exactly what your conduct was is retaliation. It's enough if it's apparent to a person who's committing the actions. And in this case, it's apparent. If you look at Brogan versus cry that involve threats. If you look at roads that involved almost a transfer, an attempt to transfer a conspiracy to transfer. And then an elaborate plan to avoid him being able to stay in the same place to give a kidney to a relative. Counsel, you are over your time. Would you like to wrap up? Yes, your honor. So I'm in closing, your honors. I believe that the district court erred in resolving factual issues in favor of the appellee and that this case should be reversed on all issues. And all three of plaintiff's claims should be reversed and sent back to the district court for trial. Thank you, counsel. The case is submitted.
judges: SMITH, TUNG, Hinderaker